UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY WUMMEL,

    Plaintiff                                     Civil Action No. 10-12997

v.                                            HON. MARIANNE O. BATTANI
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jeffrey Wummel brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On December 11, 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging disability as of July 12, 2006 (Tr. 82-84). After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on June 16, 2009 in Detroit, Michigan before Administrative Law Judge ("ALJ") James P. Alderisio (Tr. 22). Plaintiff, represented by attorney Stuart Johnson, testified, as did Vocational Expert ("VE") Samuel Goldstein (Tr. 25-30, 30-32). On August 26, 2009, ALJ Alderisio found that Plaintiff was not disabled (Tr. 45). On June 10, 2010, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the final decision on July 29, 2010.

**BACKGROUND FACTS**

Plaintiff, born November 27, 1963, was 45 when the ALJ issued his decision (Tr. 82). His application for DIB states that he completed at least four years of college and worked previously as an application developer (Tr. 104, 109). He alleges disability as a result of chronic headaches (Tr. 103).

A.     **Plaintiff's Testimony**

Plaintiff testified that he began experiencing chronic headaches in the late 1990s (Tr. 25). He reported that a prescribed beta blocker did not relieve his condition (Tr. 26). He indicated that since experiencing headaches, he played hockey and baseball less regularly, but continued to walk his dog on a daily basis (Tr. 27). He reported that in addition to headaches, he experienced fatigue (Tr. 28). He characterized the circumstances of his job termination as a "grey area," noting that his most recent employer declined to accommodate his inability to work full time (Tr. 28-29). He denied that his former job had been stressful, stating that before discontinuing work, he had "had the perfect job" (Tr. 31). He opined that he was unable to perform any full time work (Tr. 33).

B.     **Medical Evidence**

**1. Treating Sources**

In April, 2005, James Ziobron, D.O. noted complaints of chronic head pressure, remarking that Plaintiff was receiving allergy shots and had requested the removal of eight silver fillings (Tr. 266). Toxicity testing was unremarkable (Tr. 248-249). A February, 2006 eye exam was unremarkable (Tr. 144). In April, 2006, Plaintiff was examined by neurologist J. A. Tracy, M.D. at the Mayo Clinic (Tr. 163-165). Dr. Tracy noted that Plaintiff's headaches had not improved with Zanaflex, hydrocodone, diclofenac, ledocaine patches, Migranal, promethazine, Ultracet, Namenda, Wellbutrin, or Trileptal (Tr. 163). Plaintiff indicated that treatments of Botox injections, nerve

blocks, acupuncture, massage therapy, and biofeedback, were similarly unhelpful (Tr. 163). Treating notes state that Plaintiff "explored allergies, foods, been on many diets, fasted for two days, removed carpet from his home . . . and changed mattress covers and pillows," but that none of these modalities improved the condition (Tr. 152). Plaintiff reported that his discomfort level was generally a level "3 to 5" on a one to ten scale (Tr. 160). His reflexes were normal (Tr. 161). A.J. Aksamit, M.D. recommended a trial of nortriptyline (Tr. 162). An MRI taken at the Mayo Clinic showed "a few foci of nonspecific T2 abnormalities" but was otherwise normal (Tr. 157, 159).

In May, 2006, neurologist Todd D. Rozen M.D. noted that Plaintiff had not responded to doxycycline (Tr. 295). In July, 2006, Plaintiff sought inpatient care at Chelsea Community Hospital. A physical examination was unremarkable, but Plaintiff was noted to have sustained multiple head injuries in his teens and 20s (Tr. 187, 291). He was unresponsive to steroid treatment (Tr. 175). Treating notes show that Plaintiff, noting no alleviation of headaches over the course of the stay, exhibited signs of depression as a result of his lack of improvement (Tr. 184, 209, 211, 240, 271). An MRI of the cervical spine was negative for abnormalities (Tr. 207). The same month, psychologist Jeffrey D. Pingel, Ph.D found that Plaintiff could be "underreporting or minimizing interpersonal or emotional symptoms" (Tr. 381).

In September, 2006, Dr. Pingel noted Plaintiff continued to meet friends, attend a fitness gym, walk each day, eat normally, and shop (Tr. 275). In October, 2006, Plaintiff reported to Dr. Pingelthat he had recently lost his job but expressed optimism that he could "get other employment fairly easily" (Tr. 282). The same month, MRA and MRVs of the brain showed marked narrowing A-1 segment on right but otherwise unremarkable results (Tr. 329-331). An April, 2007 x-ray of the lumbar spine showed mild degenerative changes and a minor curve but was otherwise normal (Tr. 340). Michael Faber, D.O. advised Plaintiff to "continue with his specialists" (Tr. 342). In

October, 2007, Dr. Rozen noted "some question about a motivation to go back to work," but noted further that "pain is subjective" (Tr. 371). In February, 2008, Dr. Rozen opined that he had "exhausted all medicines" available for head pain (Tr. 368). In April, 2008, Drs. Pingel and Rozen opined that Plaintiff "would be able to do another job at IBM" (Tr. 365). In July, 2008, Drs. Pingel and Rozen referred Plaintiff to a Lansing, Michigan clinic (Tr. 262).

In December, 2008, Dr. Faber opined that Plaintiff's prognosis was "poor" as a result of headaches and fatigue (Tr. 385). He found that Plaintiff's symptoms would interfere with his ability to perform simple tasks on a "constant" basis, concluding that Plaintiff was incapable of even low stress jobs (Tr. 386). In May, 2009, Henry C. Hooker, M.D. (Dr. Rozen's replacement) prescribed Corgard (Tr. 394).

### 2. Non-Treating Sources

In April, 2007, Bina Shaw, M.D. performed a consultive physical examination on behalf of the SSA, noting Plaintiff's report of chronic headaches since 1993 (Tr. 299). Plaintiff denied double vision or nausea but alleged concentrational problems as a result of headaches (Tr. 299). He admitted to drinking up to three beers each day (Tr. 300). The physical examination and range of motion studies were unremarkable (Tr. 300, 302-305). The following month, a Psychiatric Review Technique found the absence of mental impairments (Tr. 308).

In March, 2008, Firoza B. Van Horn performed a neuropsychological evaluation of Plaintiff, noting that he currently treated with a chiropractor as well as Drs. Rozen and Faber (Tr. 348). Plaintiff denied smoking, illicit drugs, or excessive alcohol use (Tr. 349). He reported that he had "lots of friends," and played on hockey and baseball teams (Tr. 349). He reported that he continued to perform a full range of household and yard chores (Tr. 350). Achievement testing showed above average results, but Plaintiff was deemed moderately disabled on a Migraine Disability Assessment

Scale ("MIDAS") (Tr. 352-353). His short-term memory skills were disproportionately low to achievement testing scores (Tr. 354-355). Van Horn found the presence of a cognitive disorder (memory) and depression and anxiety (Tr. 357). She opined that Plaintiff would "benefit from cognitive/behavioral as well as vocational therapy to help him focus on other vocations that are less demanding and more flexible" (Tr. 357). Notes from a April, 2009 consultive examination by a University of Michigan Hospital neurologist state that Plaintiff's headaches were unrelated to head injuries sustained at the ages of 14, 19, and 26 (Tr. 391).

### C. Vocational Expert Testimony

VE Samuel Goldstein classified Plaintiff's former work as a systems analyst as skilled at the sedentary exertional level[1] (Tr. 30). The ALJ then posed the following question to the VE:

> Suppose I had an individual that's with the following restrictions, the jobs would be low stress jobs, this is at the sedentary level. . . . Low stress, simple one and two step instruction jobs. First, his ability to deal with work stress would be limited but satisfactory. As far as maintaining the attention and concentrations throughout the work day would be limited to satisfactory and would have reliability issues of limited but satisfactory?

(Tr. 30). The VE replied that the above limitations would allow the individual to perform the jobs of information clerk (1,000 in the regional economy); bench assembler (3,000); and plastic sorter (1,300). The VE stated that if the same individual missed two days each week for physical problems, all gainful employment would be precluded (Tr. 32). The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") (Tr. 378).

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ found that Plaintiff experienced the severe impairment of "tension headaches," but that the condition did not meet or medically equal an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 41). The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC"):

> sedentary work . . . except while he can lift ten pounds occasionally and lesser weights frequently, stand/walk two of eight hours, sit six of eight hours, he is limited to low stress work that is simple with 1 and 2 step instructions with limited ability to concentrate throughout an eight-[h]our workday

(Tr. 41). Consistent with the VE's job findings, the ALJ determined that Plaintiff could perform the work of an information clerk, bench assembler, or plastic sorter (Tr. 45).

In support of the non-disability finding, the ALJ noted that Plaintiff had previously stated that he was capable of work that "did not require as much mental effort or energy" as his former job (Tr. 43). The ALJ cited Dr. Rozen's opinion that Plaintiff was capable of low demand work (Tr. 43). Also citing Dr. Van Horn's findings, the ALJ noted that Plaintiff continued to shovel snow, cut grass, engage in numerous sports, and edit a community newsletter (Tr. 43).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v.*

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**

    **A. The Treating Physician Analysis**

Plaintiff argues first that the ALJ erred by failing to adopt Dr. Faber's disability opinion. *Plaintiff's Brief* at 8-9 (*citing* Tr. 385-388). He apparently faults the ALJ for adopting Dr. Rozen's

opinion of moderate vocational limitations over Dr. Faber's finding of complete disability, asserting that he had "more contact" with the latter physician. *Id.* at 8. He also argues that Dr. Rozen's opinion is not entirely inconsistent with Dr. Faber's, citing Dr. Rozen's finding of reduced concentration and memory. *Id.* at 8 (*citing* Tr. 336).

"[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir.2004)).

The mere fact that a treating physician's opinion is contradicted by another source is not a sufficient basis for its rejection. *Hensley,* 573 F.3d at 267 ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion."). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir.2004).

Substantial evidence generously supports the rejection of Dr. Faber's disability opinion. Dr. Faber's December, 2008 finding that headaches and fatigue rendered Plaintiff disabled is directly contradicted by Drs. Pingel's and Rozen's April, 2008 opinions that Plaintiff could perform some job (albeit a low stress position) at IBM (Tr. 365). While Plaintiff cites Dr. Van Horn's finding that performing less skilled work would be stressful, this finding cannot be reasonably interpreted to state that he was "disabled." To the contrary, Dr. Van Horn advised Plaintiff to "focus on other vocations that are less demanding and more flexible" (Tr. 357).

The ALJ, acknowledging Dr. Faber's status as a primary care provider, also met the procedural requirements for the treating physician analysis for rejecting the disability opinion by correctly noting that objective testing (showing at most mild limitation) did not support Dr. Faber's extreme findings[2] (Tr. 43). Dr. Faber's opinion that all gainful employment was precluded is also contradicted by Plaintiff's activities of daily living which included long daily walks, shopping, team sport participation, and yard and house chores (Tr. 27, 275, 349-350). The treating physician analysis, adequately explained and generously supported by the record, should not be disturbed.

### B. The Hypothetical Question

Building on his "treating physician" argument, Plaintiff contends that the ALJ's hypothetical question to VE did not account for his own testimony or Dr. Faber's opinion. *Plaintiff's Brief* at 9-10.

A hypothetical question constitutes substantial evidence only if it accounts for the claimant's physical and mental impairments. *Varley v. Commissioner of Social Security,* 820 F.2d 777, 779 (6th Cir. 1987). In *Webb v. Commissioner of Social Sec.*, 368 F.3d 629 (6th Cir.2004), while rejecting the notion that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question, nonetheless acknowledged that "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632 (citing *Varley,* 820 F.2d at 779 (6th Cir. 1987)). *See also*, *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).

---

[2] "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors" including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).

Plaintiff's argument is based on the faulty premise that the hypothetical question ought to have included all of his self-professed limitations as well as Dr. Faber's opinion. Because the ALJ's rejection of Dr. Faber's opinion was well supported and well explained, he was not required to include the treating source's findings in the hypothetical. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The ALJ was likewise entitled to omit a portion of Plaintiff's allegations from the hypothetical. While testimony regarding chronic headaches and the inability to return to the former work was accepted, the ALJ permissibly noted that Plaintiff's claims of complete disability were contradicted by the fact that he "shoveled snow, cut grass, played ice hockey twice a week, played golf in the summer, occasionally played softball, and edited a community newsletter" (Tr. 43). Because the ALJ's exclusion of certain claims was well supported by the record, the hypothetical question and the VE's job findings do not provide grounds for remand.

In closing, it should be noted that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's legitimate impairments brought about by headaches. The overriding question in this appeal is whether the ALJ's decision that Plaintiff could perform a limited range of sedentary, unskilled work was supported by substantial evidence. That I might draw a different conclusion based on these facts is of no import. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

**CONCLUSION**

For the reasons stated above, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 18, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on July 18, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 18, 2011: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217